E-FILED
Thursday, 20 January, 2022  02:49:00 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

MELISSA MORETZ, on behalf of herself
and all others similarly situated,

        Plaintiff,

v.

OSF HEALTHCARE SYSTEM,

        Defendant

Case No. 1:22-cv-1017

## CLASS ACTION COMPLAINT

Melissa Moretz ("Plaintiff"), individually and on behalf of all others similarly situated, seeks a permanent injunction requiring a change in OSF Healthcare System's ("OSF" or "Defendant") corporate policies, practices, and procedures to cause its online telehealth services to become, and remain, accessible to individuals with hearing disabilities, as well as nominal damages. In support thereof, Plaintiff respectfully asserts as follows:

## INTRODUCTION

1.      The internet and web enabled communication methods are central to modern life. As technology has advanced and become ubiquitous in the average American's life, the issue of accessibility within these technological advances and the services provided therethrough has become more prevalent.

The nearly fifty-million Americans who are deaf or hard of hearing, many of whom have speech disabilities, face limited outlets for real-time communications, a glut of Internet-delivered video programming with missing or poor-quality captions, and an increasingly large array of devices with inaccessible voice-operated interfaces . . . . These are not trivial concerns of luxury or convenience. People with disabilities have face historical barriers to societal institutions that are, in many cases, exacerbated by Internet-enabled technological disruptions that render social

1

> change without accessibility in mind. Access to the Internet is a primary driver of education, employment, civic participation, cultural engagement, and more. The denial of equal access to the Internet is tantamount to "second-class citizenship" and inhibits the social integration mandate of the ADA. The Internet likewise promises to serve the ADA's integration mandate as much or more than any other technological development, and promotes democratic engagement and human fulfillment by fostering understanding and communication among people with and without disabilities across the economic spectrum. Against this backdrop, shortcomings in Internet accessibility threaten to deny millions of Americans access to the economic, educational, cultural, and democratic life of the twenty-first century.

Blake E. Reid, *Internet Architecture and Disability*, 95 Indiana L. J. 591, 592-93 (2020) (internal citations omitted).

2.      Melissa Moretz suffers from a hearing disability as defined under Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794 *et seq*., and Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq*. As such, she requires the use of auxiliary aids (*e.g.*, closed captions) to properly interpret information.

3.      "Captions . . . come in various shapes and sizes. They can identify content, speakers, sound effects, music, and emotions and may either be open or closed. 'Closed' captions, unlike their 'open' counterparts, are activated by the viewer and can be turned on and off. In the online context, closed captioning is defined as the visual display of the audio portion of video programming." *Greater Los Angeles Agency on Deafness, Inc. v. Cable News Network, Inc.*, 742 F.3d 414, 419 (9th Cir. 2014) (internal citations omitted).

4.      Defendant is "an integrated health system owned and operated by The Sisters of the Third Order of St. Francis."[1] Defendant operates in over 147 locations spread throughout the states of Illinois and Michigan.

---

[1] About Us, OSF Healthcare, https://www.osfhealthcare.org/about/ (last accessed: Jan. 19, 2022).

5.      Patients visit Defendant's locations to seek medical assistance and/or consultations. In addition to traditional in person healthcare services, Defendant also offers medical assistance via telehealth services, which services were, and continue to be, heavily utilized due to the Covid-19 pandemic.

6.      Unfortunately, Defendant denies millions of American adults who have difficulty hearing access to its telehealth services because their telehealth accommodations do not provide auxiliary aids to assist those individuals. *See* National Institutes of Health, *Quick Statistics About Hearing* (Mar. 25, 2021), https://www.nidcd.nih.gov/health/statistics/quick-statistics-hearing (37.5 million American adults with trouble hearing).

7.      Plaintiff brings this civil rights action against Defendant to enforce Section 504 and the ADA for denying Plaintiff the same quality and access to healthcare services as those who do not have hearing disabilities.

8.      By failing to make its telehealth accommodations available in a manner that allows full and equal access for those with hearing disabilities, Defendant deprives individuals who are hearing impaired the benefits and safety of its telehealth program that are afforded to individuals without a hearing disability.

9.      Because Defendant's telehealth accommodations are not, and have never been accessible, and because upon information and belief Defendant does not have, and has never had, an adequate corporate policy that is reasonably calculated to cause its telehealth services to become and remain accessible, Plaintiff invokes the provisions of Section 504 and the ADA to seek a permanent injunction requiring that Defendant modify its policies, practices, and procedures to ensure that individuals with a hearing disability such as Plaintiff can have full and equal access to Defendant's services.

3

**JURISDICTION AND VENUE**

10.     The claims alleged arise under Section 504 and Title III of the ADA such that this Court's jurisdiction is invoked pursuant to 28 U.S.C. § 1331, 42 U.S.C. § 12188, and 29 U.S.C. § 794a(a)(2).

11.     The Court has personal jurisdiction over Defendant because Defendant resides and maintains its principal place of business in this District

12.     Venue in this District is proper under 28 U.S.C. § 1391(b)(1) and (2) because this is the judicial District where Defendant resides, and in which a substantial part of the acts or omissions giving rise to Plaintiff's claims occurred.

**PARTIES**

13.     Plaintiff is and, at all times relevant hereto, has been a resident of this District. Plaintiff is and, at all times relevant hereto, has been legally deaf and is, therefore, a member of a protected class under Section 504, 29 U.S.C. § 705(20), and the ADA, 42 U.S.C. § 12102(1).

14.     Defendant is a not-for-profit corporation organized under Illinois law and headquartered in Peoria, Illinois, who provides healthcare services.

**FACTUAL ALLEGATIONS**

15.     While the increasing pervasiveness of digital information and connectivity presents an unprecedented opportunity to increase access to goods, content, and services for people with perceptual or motor disabilities, service providers often implement digital technologies without regard to whether those technologies can be accessed by individuals with disabilities. This is notwithstanding the fact that accessible technology is both readily available and cost-effective.

A. **Proliferation of Telehealth**

16.    Telehealth accommodations provide real-time communications with a medical professional in lieu of visiting an office and meeting face-to-face.

17.    Telehealth has been a growing field of medicine since the introduction of the internet to the general public. The field expanded greatly since the start of the Covid-19 pandemic due to the ease with which it can be done and the great reduction in physical contact with both medical professionals and patients.

18.    In response to the pandemic, the federal government greatly expanded the applicability and flexibility of telehealth programs since declaring a public health emergency on January 27, 2020. *See* U.S. Department of Health and Human Services, *Telehealth: Delivering Care Safely During Covid-19* (July 15, 2020), https://www.hhs.gov/coronavirus/telehealth/index.html.

19.    Many of these changes in patient care are likely to remain once the pandemic subsides. Tanya Albert Henry, *Telehealth is here to stay, but payment is key to future use* (Nov. 8, 2021), American Medical Association, https://www.amaassn.org/practicemanagement/digital/telehealth-here-stay-payment-key-future-use.

B. **Defendant's Telehealth Services**

20.    Defendant offers many appointments and other related services through telehealth. Examples of conditions treated via telehealth include, *inter alia*, treatment for eye, ear, and mouth issues; back pain; insect bites; medication refills; respiratory infections; sexual health; and stomach problems. OSF OnCall Urgent Care, *Conditions we Treat* https://osf.zipnosis.com/conditions?_ga =2.231337500.286300407.1638458550527528694.1638458550 (last accessed: Jan. 19, 2022) (providing a complete list of services).

21.     In addition to the above-listed services, Defendant also provides patients with general consultations and visits via telehealth with healthcare professionals.

22.     Defendant is responsible for the policies, practices, and procedures concerning the development and maintenance of its telehealth services.

C. **Defendant's Knowledge of Online Accessibility Requirements**

23.     Defendant has long known auxiliary aids are necessary for individuals with hearing impairments to access its telehealth services, and that it is legally responsible for providing the same in a manner that is accessible for those with hearing impairments.

24.     The Department of Health and Human Services ("HHS") has provided multiple guidance documents on the need for accessible telehealth services for health networks and medical professionals. A February 9, 2021 guidance to healthcare providers stated the following:

a.  "Federal disability discrimination law like the Rehabilitation Act of 1973 (Section 504) and the Americans with Disabilities Act (ADA) prohibit discrimination against people with disabilities and call for equal access to health care services . . . Equal access to telehealth can be achieved by modifying procedures and providing additional support to patients before, during, and after a virtual visit;"

b.  "To get the full benefit from a telehealth visit, patients should be able to easily understand and communicate with their health care provider;" and

c.  "You must provide interpreter services and communication aids to patients with disabilities and their companions free of charge. (Patients with disabilities are not required to provide their own interpreter.)"

Department of Health and Human Services, *Improving Access to Telehealth*, (Feb. 9, 2021), https://telehealth.hhs.gov/providers/health-equity-in-telehealth/improving-access-to-telehealth/.

25.     Just weeks later, the Centers for Medicare and Medicaid Services, a subagency of HHS, released guidance entitled "Telehealth For Providers: What You Need To Know" which stated the following:

6

a.  "Access to telehealth and telecommunications technology must be inclusive, especially for those patients who may have disabilities that cause the use of technology and/or communication to be more challenging. Section 504 of the Rehabilitation Act and the Americans with Disabilities Act protects qualified individuals with disabilities from discrimination on the basis of disability in the provision of benefits and services. To provide these individuals with effective communications, covered providers must provide auxiliary aids and services when needed;"

b.  "For deaf/hearing-loss/deaf-blind patients- Providing qualified notetakers, qualified sign language interpreter, oral interpreter, cued speech interpreter, tactile interpreter, real-time captioning, written materials, or a printed script of a stock speech" may be required; and

c.  "[F]ailure to ensure that services provided through Electronic and Information Technology (EIT) are accessible to people with disabilities may constitute discrimination under federal civil rights laws."

Centers for Medicare and Medicaid Services, *Telehealth for Providers: What you Need to Know* (Mar. 2021), https://www.cms.gov/files/document/telehealth-toolkit-providers.pdf.

26.    Despite Defendant's knowledge that auxiliary aids are crucial to providing hearing-impaired patients access to its telehealth services, and despite its knowledge that the same is required by law, Defendant continues to fail to provide aids to ensure its hearing-impaired patients can have equal and full access to its telehealth services.

**D.  <u>Harm to Plaintiff</u>**

27.    Plaintiff attempted, on multiplate occasions, to access Defendant's telehealth services. Unfortunately, because of Defendant's failure to ensure accessible telehealth services for those with hearing impairments by offering auxiliary aids, Plaintiff was unable to meaningfully and effectively communicate or participate in the service. Defendant's actions resulted in denying Plaintiff full and equal access to the benefit these telehealth services were to provide.

28.    Plaintiff contacted Defendant through its chat function requesting closed captioning during her telehealth appointments.

7

29.     Defendant responded that "they are still evaluating all options we may have available to us" and would follow up with her again shortly. Defendant followed up by asking Plaintiff "what level of hearing loss do you currently have (mild, moderate, severe, or profound)?" Defendant then attempted to put the burden of resolution on Plaintiff, despite the legal duties of Defendant to provide auxiliary aids, and despite the confidentiality of healthcare related conversations, by asking "Do you have any close family or friends who would be able to join you on these visits to help?"

30.     These barriers deny Plaintiff full and equal access to all the telehealth services Defendant offers, and now deter her from attempting to use the services. Still, Plaintiff would like to, and intends to, attempt to access the telehealth services in the future due to their convenience, ease, and to test the services for compliance with Section 504 and the ADA.

31.     If the telehealth services were accessible (*i.e.*, if Defendant removed the access barriers described above), Plaintiff could independently use Defendant's services.

32.     Though Defendant may have centralized policies regarding the maintenance and operation of its telehealth services, Defendant has never had a plan or policy that is reasonably calculated to make its telehealth services fully accessible to, and independently usable by, individuals with hearing impairments. As a result, the complained of access barriers are permanent in nature and likely to persist.

33.     The law requires that Defendant reasonably accommodate Plaintiff's disabilities by removing these existing access barriers. Removal of the barriers identified above is readily achievable and may be carried out without much difficulty or expense

34.     Plaintiff has been, and in the absence of an injunction will continue to be, injured by Defendant's failure to provide its telehealth services in a manner that is accessible to her.

## CLASS ACTION ALLEGATIONS

35.    Plaintiff brings this case individually and, pursuant to Rule 23 of the Federal Rules

of Civil Procedure, on behalf of the following class:

> All persons with a qualified hearing disability in the United States
> who have been, or will be, denied equal access to Defendant's
> telehealth services.

36.    Excluded from the Class is Defendant, its subsidiaries and affiliates, its officers,

directors, and members of their immediate families, and any entity in which Defendant has a

controlling interest, the legal representative, heirs, successors, or assigns of any such excluded

party, the judicial officer(s) to whom this action is assigned, and the members of their immediate

families.

37.    Plaintiff reserves the right to modify or amend the definition of the proposed Class

if necessary before this Court determines whether certification is appropriate.

38.    The requirements of Rule 23(a)(1) are satisfied.  The class described above are so

numerous that joinder of all individual members in one action would be impracticable.  The

disposition of the individual claims of the respective class members through this class action will

benefit both the parties and this Court.

39.    The requirements of Rule 23(a)(2) are satisfied.  There is a well-defined community

of interest and there are common questions of fact and law affecting members of the Class. The

questions of fact and law common to the Class predominate over questions which may affect

individual members and including whether there is a violation of Section 504 and the ADA where

Plaintiff and the Class Members were denied full and equal enjoyment of Defendant's goods,

services, facilities, privileges, advantages, or accommodations.

40.     The requirements of Rule 23(a)(3) are satisfied. Plaintiff's claims are typical of the claims of the members of the Class.  The claims of the Plaintiff and members of the Class are based on the same legal theories and arise from the same failure by Defendant to provide auxiliary aids through telehealth.

41.     Plaintiff and members of the Class were each a patient (or potential patients) of Defendant, who have suffered from, or will suffer from, Defendant's discriminatory behavior.

42.     The requirements of Rule 23(a)(4) are satisfied. Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the members of the Class.  Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the Class and has no interests antagonistic to the members of the Class.  In addition, Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation. The claims of Plaintiff and members of the Class are substantially identical as explained above. Certifying the case as a class will centralize these substantially identical claims in a single proceeding, which is the most manageable litigation method available to Plaintiff and the Class and will conserve the resources of the parties and the court system, while protecting the rights of each member of the Class. Defendant's uniform conduct is generally applicable to the Class as a whole, making relief appropriate with respect to each Class member.

**FIRST CLAIM FOR RELIEF**
**Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 *et seq.***
**(On Behalf of the Nationwide Class)**

43.     Plaintiff realleges and reincorporates the allegations above as though fully set forth herein.

44.     Section 504 of the Rehabilitation Act states "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from participation

in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a).

45.     The Rehabilitation Act defines "program or activity" to "mean[] all of the operations of an entire corporation, partnership, or other private organization . . . which is principally engaged in the business of providing . . . healthcare . . . ." 29 U.S.C. § 794(b)(3)(A)(ii); *see also* 34 C.F.R. § 104.51. Defendant is a healthcare provider that receives federal financial assistance[2] and thus must comply with the accessibility requirements of Section 504.

46.     Plaintiff is a qualified individual with a disability under Section 504. *See* 29 U.S.C. § 705(20)(B) (referencing 42 U.S.C. § 12102); *see also* 28 C.F.R. § 39.103.

47.     Despite the clear mandate under Section 504, Defendant has intentionally violated the Rehabilitation Act by, without limitation, failing to provide its telehealth services without a way for the hearing impaired, like Plaintiff, to actively and meaningfully participate in their healthcare.

48.     As a direct and proximate cause of the aforementioned acts, Plaintiff has suffered and continues to suffer from hardship, anxiety, and injury.

49.     Because Defendant's conduct is ongoing, declaratory and injunctive relief is appropriate.

### SECOND CLAIM FOR RELIEF
**Title III of the Americans with Disabilities Act, 42 U.S.C. §12181 *et seq.***
**(On Behalf of the Nationwide Class)**

50.     Plaintiff realleges and reincorporates the allegations above as though fully set forth herein.

---

[2] In addition to any payments from Medicare or Medicaid, Defendant also received over $6 million in federal funds in the previous 12 months. *See Recipient Profiles OSF Healthcare System*, USASpending.gov, https://www.usaspending.gov/recipient (last accessed: Jan. 19, 2022).

51.     Plaintiff is an individual with a disability under the ADA. *See* 42 U.S.C. § 12102(1).

52.     Defendant operates a place of public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7).

53.     Title III provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a); *see also* 28 C.F.R. § 36.201(a).

54.     In the broadest terms, the ADA prohibits discrimination on the basis of a disability in the full and equal enjoyment of goods and services of any place of public accommodation. 42 U.S.C. § 12182(a). Thus, to the extent Defendant does not provide Plaintiff with full and equal access to its telehealth services, it has violated the ADA.

55.     In more specific terms, Title III of the ADA imposes statutory and regulatory requirements to ensure persons with disabilities are not excluded, denied services, segregated, or otherwise treated differently than other individuals as a result of the absence of auxiliary aids and services. 42 U.S.C. § 12182(b)(2)(A); 28 C.F.R. §§ 36.303(a), (c). Under these provisions, public accommodations must furnish appropriate auxiliary aids and services that comply with their effective communication obligations. *Id.*

56.     Auxiliary aids and services are necessary when their absence effectively excludes an individual from participating in or benefiting from a service or fails to provide a like experience to the disabled person.

57.     Auxiliary aids and services for the hearing impaired include, but are not limited to "[q]ualified interpreters on-site or through video remote interpreting (VRI) services; notetakers; real-time computer-aided transcription services; written materials; exchange of written notes;

telephone handset amplifiers; assistive listening devices; assistive listening systems; telephones compatible with hearing aids; closed caption decoders; open and closed captioning, including real-time captioning; voice, text, and video-based telecommunications products and systems, including text telephones (TTYs), videophones, and captioned telephones, or equally effective telecommunications devices; videotext displays; accessible electronic and information technology;" and "other similar services and actions." 28 C.F.R. §§ 36.303(b)(1), (4).

58.    To be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability. 28 C.F.R. §§ 36.303(c)(1)(ii). To this end, the Ninth Circuit has explained, "assistive technology is not frozen in time: as technology advances, [ ] accommodations should advance as well." *Enyart v. Nat'l Conference of Bar Examiners, Inc.*, 630 F.3d 1153, 1163 (9th Cir. 2011).

59.    By failing to provide its telehealth service and content in a manner that is compatible with auxiliary aids, Defendant has engaged, directly, or through contractual, licensing, or other arrangements, in illegal disability discrimination, as defined by Title III, including without limitation:

    a.  Denying individuals with hearing impairments, like Plaintiff, opportunities to participate in and benefit from the services, content, and benefits of its telehealth services;

    b.  Affording individuals with hearing impairments, like Plaintiff, access to its telehealth services that are not equal to, or as effective as, that afforded others;

    c.  Utilizing methods of administration that (i) have the effect of discriminating on the basis of disability or (ii) perpetuating the discrimination of others who are subject to common administrative control;

    d.  Denying individuals with hearing impairments effective communication, thereby excluding or otherwise treating them differently than others; and

13

  e. Failing to make reasonable modifications in policies, practices, or procedures where necessary to afford its services, privileges, advantages, or accommodations to individuals with visual disabilities.

60. Defendant has violated Title III by, without limitation, failing to make its telehealth services accessible to those with hearing impairments, thereby denying individuals with visual disabilities the benefits of its telehealth services, providing them with benefits that are not equal to those it provides others, and denying them effective communication.

61. Defendant has further violated Title III by, without limitation, utilizing administrative methods, practices, and policies that allow its telehealth services to be made available without consideration of consumers who are hearing impaired.

62. Making its online telehealth services and content accessible to the hearing impaired does not change the content of Defendant's telehealth services nor result in making the telehealth services different but would enable individuals with hearing impairments to access the telehealth services Defendant already provides.

63. Defendant's ongoing violations of Title III have caused, and in the absence of an injunction will continue to cause, harm to Plaintiff and other individuals with hearing disabilities.

64. Pursuant to 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests judgment as follows:

a. A Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements and relevant implementing regulations of Section 504 of the Rehabilitation Act and Title III of the Americans with Disabilities Act in that Defendant took no action that was reasonably calculated to ensure that its telehealth services were fully accessible to, and independently usable by, individuals with hearing impairments;

b.  A permanent injunction pursuant to 29 U.S.C. § 794a(a)(2) and 42 U.S.C. § 12188(a)(2), which directs Defendant to take all steps necessary to bring its telehealth services into full compliance with the requirements set forth in Section 504 and the ADA, and their implementing regulations, so that its telehealth services are fully accessible to, and independently usable by, hearing-impaired individuals, and which further directs that the Court shall retain jurisdiction for a period to be determined to ensure that Defendant has adopted and is following an institutional policy that will in fact cause it to remain fully in compliance with the law—the specific injunctive relief requested by Plaintiff is described more fully above;

c.  An Order certifying the class proposed by Plaintiff, naming Plaintiff as class representative, and appointing Plaintiff's counsel as class counsel;

d.  Payment of costs of suit;

e.  Payment of reasonable attorneys' fees, pursuant to 29 U.S.C. § 794a(a)(2) and 42 U.S.C. § 12205, including costs of monitoring Defendant's compliance with the judgment. *See All. To End Repression v. City of Chicago*, 356 F.3d 767, 770 (7th Cir. 2004) (citing *Eirhart v. Libbey–Owens–Ford Co.,* 996 F.2d 846, 850–51 (7th Cir.1993). ("Attorneys' fees incurred in efforts to monitor compliance with the consent decree are said or assumed to be compensable even if no postjudgment order results from the efforts.").

f.  Payment of nominal damages; and

g.  Whatever other relief the Court deems just, equitable, and appropriate.

Dated: January 20, 2022                    Respectfully Submitted,

                                           */s/ Kyle A. Shamberg*
                                           Kyle A. Shamberg
                                           **LYNCH CARPENTER, LLP**
                                           111 W. Washington Street, Suite 1240
                                           Chicago, IL 60602
                                           Telephone: (312) 750-1265
                                           kyle@lcllp.com

                                           Gary F. Lynch
                                           Nicholas A. Colella
                                           James M. LaMarca
                                           **LYNCH CARPENTER, LLP**
                                           1133 Penn Avenue, 5th Floor
                                           Pittsburgh, PA 15222
                                           Phone: (412) 322.9243
                                           Gary@lcllp.com

nickc@lcllp.com
james@lcllp.com

R. Bruce Carlson
Ian M. Brown
**CARLSON BROWN**
222 Broad St.
PO Box 242
Sewickley, PA 15143
bcarlson@carlsonbrownlaw.com
ibrown@carlsonbrownlaw.com
724-730-1753

*Counsel for Plaintiff*